COY *v.* LINDER, commissioner.

584

No. 11322.   November 25, 1936.

*Frank Alan Constangy, Clifford Walker*, and *H. M. Walker*, for plaintiff.

*M. J. Yeomans, attorney-general, George L. Goode, assistant attorney-general*, and *James H. Skelton*, for defendant.

ATKINSON, Justice. A person engaged in selling named brands· of oleomargarine, one ingredient in each of which was cocoanut oil, brought suit against the commissioner of agriculture, to enjoin enforcement of the provisions of the act of 1935 (Ga. L. 1935, p. 81), imposing an excise tax on the sale or exchange of oleomargarine containing ingredients other than those specified in the act. The alleged grounds of relief were as dealt with in the syllabus, the plaintiff's business relating to sale of oleomargarine on which the tax was imposed. The case was submitted to the judge on all questions of law and fact. After hearing evidence he refused an injunction, and the plaintiff excepted.

"Every presumption will be made in favor of the constitution-. ality of an act of the legislature. *Allison* v. *Thomas,* 44 *Ga.* 649. Before an act of the legislature will be declared unconstitutional, the conflict between the act and the fundamental law must be clear and palpable." *Cooper* v. *Rollins,* 152 *Ga.* 588, 590 (110 S. E. 726). The oleomargarine act imposes an excise tax, since it is a tax levied upon a business occupation or vocation. *Lloyd* v. *Richardson,* 158 *Ga.* 633 (124 S. E. 37) ; *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440). In *Singer Manufacturing Co.* v. *Wright,* 97 *Ga.* 114, 118 (25 S. E. 249, 35 L. R. A. 497), there was imposed a tax upon every sewing-machine company selling sewing-machines by itself or its agents, and upon all wholesale dealers; and it was maintained that the tax was not uniform, because no tax was required of retailers of machines. The statute was held valid, the court saying: "The General Assembly might well deem it in accord with a sound public policy to encourage the small dealer in his initial efforts to build up a business, by exempting him from a tax he could ill afford to pay, and taxing others in the same line of trade, but doing a business the volume of which warranted the additional burden of an occupation tax." In *Wright* v. *Hirsch,* 155 *Ga.* 229, 235 (116 S. E. 795), the court said: "What, then, is the uniformity required in the classification of occupations for taxation? . . The uniformity required in the latter kind of taxation is simple. It is this, that the tax upon every member of any class, which the taxing authority may make, shall be uniform. When that is accomplished, there is no infraction of the constitution. In *McGhee* v. *State* [92 *Ga.* 21, 17 S. E. 276], it was said: 'When, however, the legislature does

make a distinct class, it must treat each member of it alike.' . . The power of the legislature to classify persons for the purpose of imposing occupation taxes is undisputed. The provision of the constitution with which we are dealing clearly recognizes this power of classification. The power to classify necessarily includes the power to subclassify. . . The legislature can divide persons engaged in the same general occupation into subdivisions, if there is reasonable ground for such subclassification, and tax members of one subdivision, and exempt those of another subdivision. . . This brings us to consider the limitations upon the power of the legislature to make classifications of subjects for occupation taxes. This power is not unlimited; but it has but one limitation. The classification must be reasonable, and not unreasonable or arbitrary. 'Any classification may be made which is not arbitrary.' *Mayor &c. of Savannah* v. *Cooper*, 131 *Ga.* 670 (63 S. E. 138); *Williams* v. *State*, 150 *Ga.* 480, 485 (104 S. E. 408). In the first instance, it is for the legislature to judge of the reasonableness of the classification; but finally the courts decide for themselves the reasonableness or unreasonableness of the classification. Now by what rule are the courts governed in deciding upon the reasonableness or unreasonableness of such classification? Classification must be based on some reasonable ground. It can not be an arbitrary selection. This is about as accurately as the rule can be stated. The classification must square with the rule of reason. *Billings* v. *Illinois*, 188 U. S. 97, 101, 102 (23 Sup. Ct. 272, 47 L. ed. 400). The classification must be based on some difference which bears a just and proper relation to the attempted classification." In this case two of the Justices dissented, not upon the power to classify generally, but on the ground that the statute expressly excluded from its operation certain territory and therefore was not operative throughout the taxing district.

In *Hunter* v. *Wright*, 169 *Ga.* 840 (152 S. E. 61), this court held that the legislature had the power to exempt a certain class from the general operation of a tax statute. The tax involved was an occupation tax imposed on all insurance agents. There was a provision that the railroad-ticket agents selling accident-insurance tickets should not be deemed to be insurance agents, and it was claimed that the tax was invalid because of this exemption. This court held that the legislature had the right to create a class

which should be exempt from certain operations of the law, which exemption did not destroy the principle of uniformity provided by the constitution, unless the creation of the exempted class resulted in making the provision of the occupation tax so injurious upon other classes as to make it arbitrary and oppressive. In *Hoffman & Crowell Inc.* v. *Harrison*, 171 *Ga.* 792 (156 S. E. 685), there was involved a tax upon "domestic ice machines," and it was maintained that this classification was unreasonable, arbitrary, and not uniform, because the tax was imposed only on dealers in domestic ice machines, and not upon dealers in foreign ice machines. The word "domestic" meant only those ice machines to be used for domestic purposes, and the court proceeded to say the legislature had the power to classify for purpose of taxation an ice machine to be used for domestic purposes, and to exempt ice machines used for any other purpose. This court said, in *Carroll* v. *Wright*, 131 *Ga.* 728 (63 S. E. 260), that the court would keep in mind the established doctrine that the legislative body imposing the tax had a very wide discretion in the first instance; and the court held that the legislature did not transcend its power in imposing a tax, and making a distinct class between those persons who engaged in the business of selling non-intoxicating beverages which were imitations of or substitutes for beer, ale, wine, whisky or other spirituous or malt liquors, and those who sold the common drinks at a soda fountain. In the case of *Guerry* v. *Harrison*, 178 *Ga.* 669 (173 S. E. 831), Mr. Chief Justice Russell said: "The General Assembly, in the imposition of occupation taxes, may subdivide into different classes persons engaged in the same business but under different conditions and surroundings. In the exercise of this power of classification they may impose an occupation tax upon only one of these classes, provided the classification and the consequent imposition of the tax is based upon sound reason, and is not arbitrary or capricious." In *Davis* v. *Macon*, 64 *Ga.* 128 (37 Am. R. 60), the court sustained a law imposing a tax on every one retailing meat in the city, but exempting farmers selling their own products. The law taxed butchers and bakers, and those using wagons for delivery of soda water, oil, milk, or any other article, but exempted wagons delivering milk from dairies on county farms. The court sustained the law. There are so many Georgia cases announcing the right of the legislature to classify

and subclassify, and to impose taxes on one class and not on another, that it is unnecessary to multiply citations. So far as the uniformity section of the constitution is concerned, the power of the legislature to classify is unlimited, unless it exercises its power capriciously or unreasonably, and unless the classification is fictitious rather than real.

The petitioner asserts that the act is void as a violation of the sections of the Federal constitution heretofore cited. A case very analogous to the present one, decided by the Supreme Court of the United States, is Ohio Oil Co. *v.* Conway, 281 U. S. 146, 159 (50 Sup. Ct. 310, 74 L. ed. 775), in which was involved the validity of a Louisiana statute which levied a tax on oil, and the tax was graduated in amount depending on the specific gravity of the oil. The specific gravity of the oil was the sole deciding factor as to whether a certain rate of tax would apply, or another rate would be applicable. Mr. Chief Justice Hughes, rendering the opinion, said: "The applicable principles are familiar. The States have a wide discretion in the imposition of taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to insure revenue and *foster their local interests.* The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The State may tax real and personal property in a different manner. It may grant exemptions. The State is not limited to ad valorem taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to as-

sure. . . In the present instance it is apparent that a classi-
fication according to gravity can not be regarded as palpably arbi-
trary. While the Baume gravity of oils may vary, even in the
same fields, it has been used by the oil industry as indicating in a
general way, apparently satisfactory for practical purposes, the
gasoline content. In laying a specific severance tax per barrel,
the State was not compelled to make an exact determination of the
composition of each oil produced." In Heisler v. Thomas Colliery
Co., 260 U. S. 245, 255 (43 Sup. Ct. 83, 67 L. ed. 237), the Su-
preme Court had under consideration the Pennsylvania statute
imposing a tax on anthracite coal, but levying no tax on bitu-
minous coal. It was claimed that if one type of coal was taxed, all
types must be taxed. Yet the Supreme Court held the statute
valid, and said: "And so classification has uses in government—
indeed, we may say, necessities in government, for government as
well as persons has purposes varied, and at times exigent, and its
legislation must be accommodated to them, either in convenience
or necessity. . . Discriminations merely are not inhibited, for,
it was recognized, that there are 'discriminations which the best
interests of society require.' Bell's Gap R. Co. v. Pennsylvania,
134 U. S. 232, 237 [10 Sup. Ct. 533, 33 L. ed. 892]." In Wat-
son v. State Comptroller of the State of New York, 254 U. S. 122,
124 (41 Sup. Ct. 43, 65 L. ed. 170), it was said: "Any classifica-
tion is permissible which has a reasonable relation to some per-
mitted end of governmental action. . . It is enough, for in-
stance, if the classification is reasonably founded in 'the purposes
and policy of taxation.'" And further, the purposes of the legis-
lation may not be the correction of some definite evil, but may be
only to remove obstacles to a greater public welfare.

In the testimony it appears that the elements composing the
non-taxable oleomargarine were or could be raised in Georgia, and
the development of their production would be beneficial to the
State. Quite pertinent to that suggestion is the opinion of the
Supreme Court of the United States in Alaska Fish Salting &c.
Co. v. Smith, 255 U. S. 44 (41 Sup. Ct. 219, 65 L. ed. 489). A
statute imposed a tax upon those manufacturing fish oil, ferti-
lizers, and fish meal, in whole or in part from herring. The
statute was attacked because no tax was levied upon the making
of such products from other fish. The Supreme Court upheld the

validity of the law, and said: "The complainant alleges that the tax will prohibit and confiscate the plaintiff's business, which is that of manufacturing fish oil, fertilizer, fish meal, and by-products from herring, either in whole or in part; that the tax unreasonably discriminates against the plaintiff, as it levies no tax upon the producers of fish oil, &c., from other fish, and is otherwise extortionate; and that it contravenes the act of Congress in lack of uniformity and in exceeding one per centum of the actual value of the plaintiff's property. The prophecies of destruction and the allegations of discrimination as compared with similar manufacturers from salmon are denied by the attorney-general for Alaska, the latter denial being based upon a comparison of the statutes which of course is open. We are content however to assume for the purposes of decision that, not to speak of other licenses, the questioned acts do bear more heavily upon the use of herring for oil and fertilizer than they do upon the use of other fish. But there is nothing in the constitution to hinder that. If Alaska deems it for its welfare to discourage the destruction of herring for manure and to preserve them for food for man or for salmon, and to that end imposes a greater tax upon that part of the plaintiff's industry than upon similar use of other fish or of the offal of salmon, it hardly can be said to be contravening a constitution that has known protective tariffs for a hundred years. Rast v. Van Deman & Lewis Co., 240 U. S. 342, 357 (36 Sup Ct. 370, 60 L. ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455). Even if the tax should destroy a business, it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk. . . We need not consider whether abuses of the power might go to such a point as to transcend it, for we have not such a case before us. The acts must be judged by their contents, not by the allegations as to their purpose in the complaint. We know of no objection to exacting a discouraging rate as the alternative to giving up a business, when the legislature has the full power of taxation." In Quong Wing v. Kirkendall, 223 U. S. 59, 63 (32 Sup. Ct. 192, 56 L. ed. 350), the Supreme Court sustained a tax which was levied on all those engaged in the laundry business other than steam laundry business; and it was provided that it was not applicable to women so engaged, where not more than two women were employed. It was

argued that the very purpose of the tax was to put laundries conducted by Chinese out of business, because they only were engaged in the hand laundry business. The Supreme Court said: "If the State sees fit to encourage steam laundries and discourage hand laundries, that is its own affair. . . The particular points at which that difference shall be emphasized by legislation are largely in the power of the State." In the testimony in this case it is shown that there is a substantial difference between oleomargarine of the taxed and untaxed varieties. The varieties are different in their spreadability, in nutrition, in their response to temperature, in their frying qualities, and their reaction to the taste, and in other respects pointed out by the witnesses. These and other differences were no doubt in the mind of the legislature in passing the act.

A further attack is made upon the oleomargarine law on the ground that it is invalid as being confiscatory, in violation of the State and Federal constitutions. It must be conceded that the tax imposed by the oleomargarine law is burdensome, but does this make it violative of the due-process clause of the constitution of the State or of the United States? The provisions of the State and Federal constitutions are identical. It seems, under the authorities, that a legislature may pass laws which would render impossible the continuance of a particular business, because of the size of the tax. In *Morton* v. *Macon*, 111 *Ga.* 162 (36 S. E. 627, 50 L. R. A. 485), this court seems to have recognized the confiscatory power of the legislature, by reason of the statement in that decision as follows: "We may, for the purposes of this case, grant to the fullest extent the authority of the lawmaking power of the Nation or of any State to respectively enact laws of the nature above indicated, without touching the question we have herein undertaken to decide. Granting that the General Assembly of this State might tax out of existence useful occupations, and even that it might in terms empower a city so to do, we are perfectly certain that nothing of the kind has been attempted in the present instance." In McCulloch *v.* Maryland, 4 Wheaton, 316 (4 L. ed. 579), was announced the familiar statement: "That the power to tax involves the power to destroy . . are propositions not to be denied." In Veazie Bank *v.* Fenno, 8 Wallace, 533, 548 (19 L. ed. 482), the court said: "It is insisted, how-

ever, that the tax in the case before us is excessive, and so excessive as to indicate a purpose on the part of Congress to destroy the franchise of the bank, and is therefore beyond the constitutional power of Congress. The first answer to this is that the judicial can not prescribe to the legislative department of the government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected. So if a particular tax bears heavily upon a corporation, or a class of corporations, it can not, for that reason only, be pronounced contrary to the constitution."

In McCray v. United States, 195 U. S. 27, 60 (24 Sup. Ct. 769, 49 L. ed. 78, 27 Ann. Cas. 561), was involved a law which taxed uncolored oleomargarine one fourth of a cent a pound, and colored oleomargarine ten cents a pound. It was proved that as a result of this high tax on colored oleomargarine the sale of this product was *absolutely destroyed*. It was contended that this was the very purpose of the law, and that a tax could not be so high in amount as to result in banning the sale of a legitimate and wholesome product. The court held the statute valid, and declared that a tax is valid even though it may destroy a legitimate business, saying: "The proposition that where a tax is imposed which is within the grant of powers, and which does not conflict with any express constitutional limitation, the courts may hold the tax to be void because it is deemed that the tax is too high, is absolutely disposed of by the opinions in the cases hitherto cited, and which expressly hold, to repeat again the language of one of the cases (Spencer v. Merchant, 125 U. S. 345 [8 Sup. Ct. 921, 31 L. ed. 763]), that 'The judicial department can not prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.'" In Alaska Fish Salting &c. Co. v. Smith, supra, the court held: "Even if the tax should destroy a business, it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk. . . We know of no objection to exacting a discouraging rate as the al-

ternative to giving up a business, when the legislature has the full power of taxation." The Supreme Court reaffirmed these principles in Magnano Co. *v.* Hamilton, 292 U. S. 40 (54 Sup. Ct. 599, 78 L. ed. 1109), where a statute of the State of Washington was involved which taxed all oleomargarine fifteen cents per pound. It was conceded in this case that as a result of this tax no oleomargarine whatsoever could be sold. Yet the Supreme Court held this tax valid. In the decision, which reaffirmed the principles heretofore announced, it was said: "Nor may a tax within the lawful power of a State be judicially stricken down under the due-process clause simply because its enforcement may or will result in restricting or even destroying particular occupations of business." In Fox *v.* Standard Oil Co., 294 U. S. 87, 99 (55 Sup. Ct. 333, 79 L. ed. 780), a West Virginia statute was attacked on the ground that the statute levied high taxes on a chain store. The Supreme Court reaffirmed its previous decisions, saying: "When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers." It is unnecessary to multiply authorities upon the question, but we cite also Ohio Oil Co. *v.* Conway, 281 U. S. 146-159 (50 Sup. Ct. 310, 74 L. ed. 775), and Heisler *v.* Thomas-Colliery Co., 260 U. S. 245 (supra), as sustaining the principles heretofore laid down. It will be observed that there is a difference between arbitrary discrimination in the levying of taxes, and the imposition of a heavy, burdensome tax where no capricious discrimination occurs.

The foregoing is sufficient elaboration of the rulings announced in the first and second headnotes. The third headnote does not require elaboration.

*Judgment affirmed. All the Justices concur.*