23170.   CAMPBELL, Commissioner of Agriculture v. J. D. JEWELL, INC.

ARGUED OCTOBER 11, 1965—DECIDED NOVEMBER 4, 1965—REHEARING DENIED NOVEMBER 16, 1965.

*Arthur K. Bolton, Attorney General, George J. Hearn, III, Alfred L. Evans, Jr., Assistant Attorneys General,* for appellant.

544

*Robinson, Thompson, Buice & Harben, B. Carl Buice,* for appellee.

ALMAND, Justice. Because it is accurate and complete we have adopted the appellant's statement of the case: "This action was initiated by appellant, Phil Campbell, in his official capacity as Commissioner of Agriculture of the State of Georgia, to recover a feed inspection tax alleged to be due and unpaid. Named as defendant was J. D. Jewell, Inc. (the appellee herein), a Georgia corporation engaged in the poultry business and maintaining its principal place of business in Gainesville, Hall County, Georgia.

"During the period of time in question, to wit: October 1 to December 1, 1962 . . . the statute imposing the feed inspection tax was *Georgia Laws* (1906), pp. 83, 91, as amended by *Georgia Laws* (1953), p. 418 and *Georgia Laws* (1956), pp. 293, 294. . .

"In his amended petition appellant alleged that J. D. Jewell, Inc. . . . was a Georgia corporation engaged in the poultry business and that in the course of such business it had entered into lease agreements with various property owners whereby it leased chicken houses, drinking and feeding equipment, and a sufficient amount of land adjoining the chicken houses to enable it to raise baby chicks to the broiler stage. The petition sets forth the terms of the alleged leases verbatim, including the following language relating to Jewell's contractual obligation to furnish the feed necessary to raise the chicks: 'Lessee is to furnish all the necessary medicine and feed for its chicks either in bulk or paper bags or any other kind of bags it desires and shall have the right to store the same on the leased premises. . .'

"It is further alleged by the amended petition that between the dates October 1, 1962, and December 1, 1962, Jewell, in accordance with the above-quoted provision of the lease whereunder it had become contractually obligated to furnish feed, did produce and provide some 2,806 tons of feed upon which an inspection fee of $561.20 plus penalty of $56.12 was due and unpaid. . .

"Defendant Jewell filed four general demurrers to the amended

petition urging that it failed to state a cause of action for the following reasons:

" (1)  The petition does not state a cause of action.  . .

" (2)  Enforcement of the statute in the manner sought would violate the 'due process' clauses of both Federal and State Constitutions in that the language of the 1956 amendment, particularly with respect to the provisions therein relating to the applicability of the inspection tax to feed furnished, supplied or used for the growing or feeding of poultry 'under contract, lease or agreement' is too vague and uncertain to meet the requirements of 'due process' contained in the Fifth and Fourteenth Amendments to the Constitution of the United States and in Article I, Section I, Paragraph III of the Constitution of the State of Georgia of 1945 (Ga. Code Ann. § 2-103).  . .

" (3)  The tax is based solely upon the existence of a 'contract, lease or agreement' without regard to subject matter, materiality, parties or effect and thus results in an arbitrary, unreasonable and discriminatory classification and thereby violates Jewell's constitutional rights under the 'equal protection' clause of the Fourteenth Amendment to the Constitution of the United States.

" (4)  The 1956 amendment under which the action was brought is violative of Article III, Section VII, Paragraph VIII of the Constitution of the State of Georgia of 1945 (Ga. Code Ann. § 2-1908) in that it contains matter not intimated by the title of the 1956 Amendment.  . ."

It is then recited that the trial court passed the following order on the general demurrers: ".  .  . It is the judgment of this court that so much of the general demurrers as attack the language of the proviso as void for uncertainty be sustained and the language of the proviso insofar as it relates to any 'person, firm or corporation' granted the exemption, is hereby declared null and void," and further recited that the writ of error in this court was transferred to the Court of Appeals (*Campbell v. J. D. Jewell, Inc.*, 220 Ga. 400, 139 SE2d 161), the trial court not having passed on the validity of the Act of 1956, and that the Court of Appeals in *Campbell v. J. D. Jewell, Inc.*, 111 Ga. App. 242, held: "Since the first proviso contained in the

amendment was not invalidated by the order under review, and since it is sufficiently clear from the language of the amendment that it was the intention of the General Assembly to impose the tax sued for, the court erred in sustaining the general demurrer."

The statement continues: "After the case . . . was remanded to the Superior Court of Hall County, another hearing on the demurrers was set for July 29, 1965. On said date, after hearing counsel for both parties, the trial court entered its order sustaining all four of appellee's renewed and additional demurrers to the amended petition of appellant and dismissing the amended petition. . . To such order of July 29, 1965, appellant filed its 'Notice of Appeal' to this court."

Ga. L. 1956, p. 293 is an amendment to *Code Ch.* 42-2 "Concentrated Commercial Feeding Stuffs." This Act amended the chapter by adding at the end of *Code* § 42-205 the following: "Provided further, that the provisions of this Chapter shall apply to all commercial feeding stuffs furnished, supplied or used for the growing or feeding under contract or agreement of livestock, domestic animals or poultry, and shall also apply to any feeding stuffs which are produced by the purchase of grain or other materials and the mixing of same with a concentrated commerical feeding stuff used as a base. If the concentrated commercial feeding stuff used as a supplement or base has already been taxed under this Act and the inspection tax paid, then the amount paid shall be deducted from the gross amount of the tax due on the total feeding stuff produced; and provided further, that any person, firm or corporation producing or purchasing his or its own grain or other material and grinding or mixing same with a concentrated commercial feeding stuff as a supplement or base for the purpose of feeding his or its own livestock, domestic animals or poultry, shall not be subject to the inspection tax provided herein for mixtures of feeding stuff. Provided, that such exemption shall not be applicable to feed furnished, supplied or used for the growing or feeding of livestock, domestic animals or poultry under contract, lease or agreement." Prior to this the inspection tax was imposed only on the sale or offering or exposing of concentrated commercial feeding stuffs for sale.

■ Due Process. The second ground of the general demurrer asserts that the language of the first and third portions of the Act of 1956, viz., "furnished, supplied or used for the growing or feeding under contract or agreement of livestock, domestic animals or poultry," and "Provided, that such exemption shall not be applicable to feed furnished, supplied or used for the growing or feeding of livestock, domestic animals or poultry under contract, lease or agreement," is so vague and indefinite "that men of reasonable intelligence must necessarily guess as to its meaning and differ as to its interpretation in that the statute does not define the scope of the words 'contract,' 'lease,' and 'agreement,' does not indicate the subject matter of the 'contract, lease or agreement,' does not indicate the parties to said 'contract, lease or agreement' nor does this provision of the statute in any other way clarify the area of its intended operation or the scope of its intended effect," and is violative of the due process clauses of the Fourteenth Amendment to the Federal Constitution and the Georgia Constitution.

Even in statutes penal in nature due process requires only that they be of such certainty and definiteness as would enable a person of ordinary intelligence to comprehend that the particular act he proposes to do is forbidden by the statute. Cole v. Arkansas, 338 U.S. 345 (70 SC 172, 94 LE 155) ; *Wright v. State,* 217 Ga. 453 (122 SE2d 737).

The application of due process with respect to vagueness and uncertainty is not applied as strictly to civil statutes as to those penal in nature. The rule is that a statute may be too vague and uncertain to be capable of enforcement as a penal statute and yet may be sufficiently certain to set forth a rule of civil conduct. *Teague v. Keith,* 214 Ga. 853 (108 SE2d 489).

Prior to the amending Act of 1956 the inspection tax imposed under *Code Ann.* § 42-205 was imposed upon those persons, firms or corporations who sold or offered for sale concentrated commercial feeding stuffs. The purpose of the amendment is to impose the tax on one who furnished or supplied to another under contract or agreement commercial feeding stuffs for livestock, domestic animals and poultry, provided that the tax would not be imposed upon those who produced their own grain

and mixed or ground it with a concentrated commercial feeding stuff for the purpose of feeding their own livestock, domestic animals or poultry. The third proviso merely reiterates and emphasizes the first proviso.

We are of the opinion that the first and third provisos of the 1956 Act are sufficiently certain and definite to inform a person of normal intelligence of the class of persons on which it proposes to impose an inspection tax and does not violate the due process clause of either the Federal or State Constitution.

■ Equal Protection. The third ground of the general demurrer asserts that the 1956 Act is violative of the equal protection clause of the Fourteenth Amendment to the Federal Constitution in that: "Plaintiff attempts to collect said inspection tax without alleging that the feed in question was sold but rather by alleging that said feed was 'produced and provided' for birds which remained the property of the defendant." "No sale of feed is alleged or relied upon. To allow the plaintiff thus to apply the tax to feed consumed by the manufacturer's own poultry because of the existence of any 'agreement' when said tax does not apply to feed consumed by a manufacturer's own poultry in the absence of such an agreement would be to deny the defendant equal protection of the law in violation of the Fourteenth (Article XIV) Amendment of the Constitution of the United States in that the application of or exemption from said inspection tax based solely upon the existence or non-existence of any 'contract, lease, or agreement' whatsoever without regard to the materiality, subject matter, parties or effect of such contract, lease or agreement is an arbitrary, discriminatory and unreasonable basis of classification which imposes upon the defendant a tax burden not placed upon others in substantially the same situation as the defendant."

The question for decision is: does the exemption of one who grinds or mixes concentrated commercial feeding stuff for the feeding of his *own* livestock, domestic animals and poultry constitute an arbitrary, discriminatory and unreasonable classification as against another who is taxed who furnishes or supplies feeding stuffs to another under contract or agreement for feeding livestock, domestic animals and poultry?

It has been held that a classification for the purpose of imposing an excise tax is reasonable. *Coy v. Linder*, 183 Ga. 583 (189 SE 26). The classification must be based on some reasonable ground and on some difference which bears a just and proper relation to the attempted classification. Billings v. Illinois, 188 U.S. 97, 101 (23 SC 272, 47 LE 400). In Heisler v. Thomas Colliery Co., 260 U.S. 245, 255 (43 SC 83, 67 LE 237), the Supreme Court had under consideration a State statute which imposed a tax on anthracite coal but levied no tax on bituminous coal. It was claimed that if one type of coal was taxed all types must be taxed. It was there said: "And so classification has uses in government—indeed, we may say, necessities in government, for government as well as persons, varied and, at times, exigent, and its legislation must be accommodated to them, either in convenience or necessity. That government has the power to do so, we have often pronounced; not, however, omitting to recognize the restraints upon the power while expressing its range and adaption. In its exercise in taxation, we have said, it is competent for a State to exempt certain kinds of property and tax others, the restraints upon it only being against 'clear and hostile discriminations against particular persons and classes.' Discriminations merely are not inhibited, for, it was recognized, that there are 'discriminations which the best interests of society require.' Bell's Gap R.R. Co. v. Pennsylvania, 134 U.S. 232, 237."

*Code Ann.* § 42-205, which was amended by the Act of 1956, was a part of the Act of 1906 (Ga. L. 1906, p. 83) which was entitled "An Act to prevent the adulteration, misbranding and imitation of foods for man or beast, . . . providing for the inspection and analysis of the articles described by the Georgia State Department of Agriculture." This Code section, as amended, has for its purpose the protection of persons who (a) purchase concentrated commercial feed stuffs for the feeding of their livestock, domestic animals and poultry or (b) those who grain or feed under a contract or agreement livestock, domestic animals and poultry where the commercial feeding stuff is supplied or furnished. To exempt one from the inspection tax who feeds his own livestock, domestic animals or poultry

from the grains or food stuffs which he mixes is not an unreasonable objective. The primary purpose of the statute being for the protection of the owners of livestock, domestic animals and poultry or those feeding them under contract or agreement as against misbranding or adulteration, where the food stuffs were either bought from or supplied by another, the General Assembly could logically assume that the danger of the owner of a cow, horse or chicken being defrauded by feeding them adulterated foods would be unsubstantial. We are of the opinion that this classification has a fair and substantial relation to the legislative purpose.

■ In the fourth ground of the general demurrer it is insisted that the 1956 Act violates Art. III, Sec. VII, Par. VIII of the Georgia Constitution (*Code Ann.* § 2-1908) which provides: "No law shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof" in that prior to the 1956 Act the inspection tax applied solely to feeds "sold or offered for sale" and though the body of the 1956 amendment seeks to impose a tax on feeds provided by or to defendants to feed its own birds without any sale or offer of sale, there is nothing in the title of the 1956 Act to indicate an intention to impose a tax upon feeds not sold or offered for sale.

The caption of the 1956 Act as here applicable reads: "An Act to amend Code Chapter 42-2, relating to concentrated commercial feeding stuffs, as amended, so as to redefine concentrated commercial feeding stuffs; to extend the provisions of this Code chapter to feeds supplied on a contract basis; . . . and for other purposes."

"In determining whether an amending statute contains matter different from that expressed in its title, the title of the original statute may be considered when it is set forth in the title of the amending statute." *Holland v. State,* 155 Ga. 795 (1a) (118 SE 203).

The amended Act was one to prevent the adulteration of foods and for inspection and analysis by the Department of Agriculture. "It is well settled that provisions germane to the general subject-matter embraced in the title of an Act, and which are

designed to carry into effect the purposes for which it was passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by use of the words 'and for other purposes.'" *Cady v. Jardine,* 185 Ga. 9, 11 (193 SE 869).

The amending Act of 1956 does not offend the article of the Constitution that forbids the passage of a law which contains matter different from that expressed in the title thereof.

It was error to sustain the general demurrer and dismiss the petition.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., who dissents, and Mobley, J., not participating for providential cause. Cook, J., disqualified.*