44216, 44217, 44218, 44219. HENRY GRADY HOTEL CORPORATION v. WATTS (four cases).

252

ARGUED JANUARY 9, 1969—DECIDED FEBRUARY 13, 1969—
REHEARING DENIED FEBRUARY 28, 1969.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Sam F. Lowe,
Jr., H. A. Stephens, Jr.,* for appellant.

*Webb, Parker & Ferguson, John Tye Ferguson, Paul Webb,
Jr., T. B. Higdon,* for appellees.

DEEN, Judge. ■ It is strongly contended that the evidence
failed to show death by drowning, but rather established that it
resulted from asphyxiation because of the regurgitation of food
and inhalation of vomitus, that there was no causal connection

between any negligence of the defendant and the death, and that the boy failed to exercise care for his own safety and assumed the risk of drowning by entering the pool in the first place. In *Dillashaw v. Coogler,* 114 Ga. App. 139 (150 SE2d 161), a drowning case relied upon by the defendant, the holding is simply that the defendant was not negligent, and the question of whether the boy died from drowning or from receiving blows on the head is mentioned but is not critical to the decision. More to the point is the holding in *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (129 SE2d 408) (quoted in part favorably in *Old Colony Ins. Co. v. Dressel,* 220 Ga. 354 (138 SE2d 886)): "Where a plaintiff in a civil case supports his case solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied on. . . It is for the court to say whether the circumstances reasonably establish the hypothesis relied on by the plaintiff. If the evidence meets this test, it is then for the jury to say, either that the plaintiff has not carried his burden of proof because the evidence equally supports his hypothesis and some other reasonable hypothesis, or that the plaintiff has carried his burden of proof in that the evidence preponderates to his hypothesis as against all other reasonable but less probable hypotheses." In *McCarty* the question was whether the regurgitation and blockage of air passages which brought about death were caused by an accidental fall and concussion or whether they preceded and were the proximate cause of the fall. Such cause and effect relationships are always left to a jury under all the evidence. Here there was both opinion and circumstantial evidence to authorize a jury finding that the boy drowned rather than a conclusion that he would have died of asphyxiation whether or not he was in the water at the time.

The plaintiffs pleaded and proved an ordinance of the Fulton County Commissioners of Roads and Revenues passed for the expressed purpose of controlling swimming pools in hotels, tourist courts, apartment houses containing more than three families, clubs and schools to the extent that their operation, maintenance or management might threaten or impair the life or health of the public, and which required in part that at all

times when such a pool is open to use by bathers there shall be a qualified attendant on duty, a shepherd's hook and a lifesaving ring readily available for use. The ordinance, violation of which would constitute negligence per se, is attacked on a number of grounds. Insofar as it is contended that the county commissioners had no power to enact such ordinance, the attack fails. By amendment of Article XI of the Constitution of Georgia (Ga. L. 1951, p. 828, ratified Nov. 4, 1952) the General Assembly was empowered to pass local legislation giving the Fulton County Commissioners powers in regard to health and sanitation, by virtue of which the General Assembly delegated to the commissioners authority to enact rules, regulations and orders for the use of and enforceable by the county board of health. The ordinance complained of clearly comes within this category.

By Ga. L. 1953, Jan. Sess., p. 2718, the Commissioners of Fulton County were delegated the authority to adopt "a system of rules, regulations and orders covering health and sanitation in Fulton County," under which the ordinance in question was adopted and made applicable to swimming pools "insofar as their . . . maintenance and management may threaten or impair the life or lives or health of the public." A pool which is open to that portion of the public choosing to stay at the proprietor's hotel, regardless of the physical fitness or swimming ability of the user, may well be a health hazard, and such an ordinance, when backed by proper constitutional and legislative authority, is therefore a proper subject matter for regulation for health and safety purposes under the police power of the political subdivision involved. "Such regulations will be sustained if they be reasonably adapted to secure the object in view, that is, the preservation of public health, and yet do not unreasonably interfere with the liberty, property, or business of the citizen." *Abel v. State*, 64 Ga. App. 448, 453 (13 SE2d 507).

As to the "equal protection" objection, it is well settled that the lawmaking body may in the exercise of its police powers set up classifications and categories where the relation of the classification has a fair and substantial relation to the legislative purpose, and is not arbitrary or for a wrongful purpose. *Campbell v. J. D. Jewell, Inc.*, 221 Ga. 543 (2) (145 SE2d 569) ; *Atlantic C.*

*L. R. Co. v. State,* 135 Ga. 545 (2) (69 SE 725, 32 LRA (NS) 20). Private swimming pools for the use only of the owner and his personal friends reasonably stand from the point of view of safety regulations on a different footing from those made available by the proprietor of a business establishment to the general public or that segment of it which chooses to deal with him. The ordinance is not subject to the attacks levied against it.

■ That failure to exercise ordinary care for one's own safety which will bar recovery under *Code* § 105-603 is defined in *Columbus R. Co. v. Asbell,* 133 Ga. 573, 575 (66 SE 902) as follows: "When a person knowingly and voluntarily puts himself in a place of immediate and obvious peril or exposure to injury, without some reason of necessity or propriety in so doing, and injury happens to him in consequence of his being in that place, he is not allowed to recover, notwithstanding the party may negligently injure him." And in *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665 (88 SE2d 6): "One who knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, cannot hold another liable for damages resulting from a hurt thus occasioned, although the same may be in part attributable to the latter's negligence." Whether the plaintiff has voluntarily engaged in such a risk is a jury question except in clear and palpable cases, to be decided from their observation, their common sense, and their common knowledge and experience. *Broyles v. Prisock,* 97 Ga. 643 (6) (25 SE 389). In all other cases, the comparative negligence rule applies. *Christian v. Macon R. &c. Co.,* 120 Ga. 314 (1) (47 SE 923); *Thomas v. Gainesville & Dahlonega Elec. R. Co.,* 124 Ga. 748 (52 SE 801); *Savannah Elec. Co. v. Crawford,* 130 Ga. 421, 424 (60 SE 1056). By the same standard the application of the doctrine of assumption of risk (which historically grew out of contract relations but is now frequently referred to in negligence cases) is for jury determination under the specific circumstances involved unless the peril is so great, and the facts showing that the plaintiff with full knowledge chose to undergo it are so certain, that he must be taken to have consented to the injury re-

sultant from his act. *Roberts v. King,* 102 Ga. App. 518 (116 SE2d 885); *Knowles v. LaRue,* 102 Ga. App. 350, 354 (116 SE2d 248). A normal 14-year-old boy is judged by the same standard as an' adult in drowning cases. *Bourn v. Herring,* 225 Ga. 67. The particular boy in this case was 14 years old, physically strong and well formed, intelligent and a good swimmer. The hotel pool where he went swimming, accompanied by companions who could also swim and within hailing distance of hotel employees, was of a small irregular shape with a little "island" or projection in its center. It is obvious from the testimony that from any location in this pool a swimmer could with very few strokes reach a place of safety. In such a situation the risk of drowning is exceedingly remote, and even the risk of not being rescued if the unexpected emergency occurs is at least a question for the jury and not for this court to decide. The plaintiffs are not barred from recovery as a matter of law on the ground that their son either failed to exercise ordinary care for his own safety or assumed the risk of drowning in an emergency situation due to the absence of rescue equipment, nor was there error in the portions of the charge complained of in the 9th, 10th and 11th enumerations of error. The court in instructing the jury that the 14-year-old decedent's degree of diligence would be "what degree of care would reasonably be expected of a boy of his age and capacity" did not commit the error pointed out in *Paulk & Fossil v. Lee,* 31 Ga. App. 629 (121 SE 845) of charging *Code* § 105-204 relating to children of tender years, but did observe the criterion set up in *Central R. & Bkg. Co. v. Phillips,* 91 Ga. 526 (2) (17 SE 952), "such diligence as might fairly be expected of the class and condition to which he belongs."

■ A witness who qualified as an expert in the field of actuarial science and was a member of the Associated Appraisers of Earning Capacity, an association of statisticians having special knowledge in this field, testified as to lifetime salaries of high-school graduates of average intelligence based on statistical averages taking into account mortality tables, certain inflationary trends, and methods of reducing figures arrived at to present cash values. The testimony contained statements that, based

on 1959 figures, a high school graduate entering upon his life-work at age 18 could reasonably be expected to receive lifetime earnings of $254,000; figuring the lifetime earnings at no more than minimum wage the figure would amount to $154,086; based on a present 3½% annual wage increase factor the figure would be $560,000, and without wage rise factors but with a college education it would amount to $583,364. Such figures reduced to present cash values were in a range between ⅓ and ½ of the gross amounts. The verdicts actually returned were $13,000 in favor of the father and $100,000 in favor of the mother.

In *Rhodes v. Baker*, 116 Ga. App. 157 (4) (156 SE2d 545) it was held to be the better practice not to permit an actuarial expert to give his opinion, based on earnings, life expectancy and related matters, of the "full value of the life of the deceased" because the jury is not restricted to finding that the total earnings of the deceased reduced to present cash value necessarily represents the full life value. That case had nothing to say on the issue of whether an expert opinion on statistical averages of earning power related to various ages and categories of persons is admissible opinion evidence. The court has frequently said that in dealing with a child of unproved capacities the value of its life is the enlightened conscience of an impartial jury. See *Royal Crown Bottling Co. of Macon v. Bell*, 100 Ga. App. 438, 440 (111 SE2d 734). "This does not mean that juries can arbitrarily enrich one party at the expense of the other, nor that they should act unreasonably through mere caprice. But it authorizes you to give reasonable damages where the proof shows that the law authorizes it." *Davis v. Central R.*, 60 Ga. 329 (4). In this case neither the qualifications of the witness in this field nor the accuracy of the facts to which he testified is at issue; it is simply contended that an opinion as to average earning potential founded on a statistical basis should not be presented for jury consideration. The *enlightened* conscience of a jury means also its *informed* conscience; proper evidence of this sort should militate against arbitrary and capricious verdicts, and it is therefore admissible under the exigencies of the case. The verdicts returned were substantially less than the statistical averages testified to and were not excessive as a matter of law.

5. After Sherrill Watt's death, and after the group had returned to its home, the principal in charge of the trip, but who is not a defendant in the case and was not present on the scene until after the boy's body was removed from the water, wrote a letter to the parents stating his opinion of the circumstances under which the tragedy had occurred. A copy of this letter was offered in evidence on the ground that unidentified portions of the letter were inconsistent with other testimony, also unidentified, offered at the trial, and was objected to on the ground that it was a self-serving declaration. As a contradictory statement it might be relevant for impeachment purposes had the proper foundation been laid under *Code* § 38-1803, but this procedure was not followed. The ruling was proper.

*Judgment affirmed in Cases No. 44216 and No. 44218. Appeal dismissed in Cases No. 44217 and No. 44219. Bell, P. J., concurs. Eberhardt, J., concurs in the judgment.*