65102. TOWNSEND et al. v. MOORE.

QUILLIAN, Presiding Judge.

This is an appeal from a jury verdict and judgment for defendant in an action for wrongful death.

In October 1979 David E. Townsend took his 14-year-old son David Lee and his 15-year-old friend Michael Moore on a day hunting trip. All were armed with shotguns. After hunting for a period of time, they drove to another location, where Mr. Townsend let the boys out on one side of a woods and said he would meet them with his van on the other side. Mr. Townsend then parked his van and went off some distance from it. Having found no game the two boys came to the van. David Lee propped his gun against the van and sat in the driver's seat with the door open. Michael stood in front of the open door and while he was attempting to unload his pump action shotgun the gun fired, shooting David Lee in the chest and causing his death. David Lee's parents brought this action against Michael Moore and his father. The trial court granted a motion for directed verdict in favor of Michael's father but no appeal is taken from that ruling. *Held:*

1. Appellants assert that the trial court erred in not granting their motions for a directed verdict as to appellee's liability. In addition to establishing the death and cause thereof, appellants presented the cross-examination testimony of appellee who was the only witness to what had occurred. He testified that his 20 gauge pump shotgun was in proper operating condition and that he had

fired it several times during the hunt before the fatal shooting occurred. When he and David Lee got to the van he told David that he was going to unload his gun and David said okay. At that time he was facing David with the gun butt on his hip and the muzzle pointing toward the sky in the direction of the top of the open door of the van. To unload it he had to pull the pump action to the rear and as he pulled on the pump action it "jammed somehow, and I jerked it a little bit harder and it just slipped off my hip (towards his crotch). And, while it slipped, David was bending down toward his (gun), and come onto my gun. . . . He was coming down toward (my gun)." Before the gun fired the safety was on and his finger was not on the trigger. He did not know if the pump mechanism and bolt had started to move to the rear when the gun fired. The gun "was slipping out of my hand." He admitted that when he was asked in his deposition how he thought the gun fired he stated: "I guess when I pulled it, was pumping it down, it just caught somewhere or something and went off." He had no idea of what it caught on.

Two weapons experts testified as to their examination of the gun. Parian from the GBI Crime Laboratory, testified that when he received the weapon, the pump action was jammed forward and would move to the rear only by forcing it. He took it apart and found a raised area or burr on the tubular magazine that was scraping inside the tube of the forearm stock. He repaired this defect which had nothing to do with the firing or safety mechanisms. Other than this defect he found nothing wrong with it. The safety was operative and he was unable to get the weapon to fire accidentally by dropping it or banging it around with the safety on or off. The weapon is so designed that once the pump mechanism moves to the rear the bolt also moves back with it and the weapon cannot be fired after the bolt moves from the forward or closed position. It is not impossible, although highly improbable, for a gun to malfunction unexpectedly in a manner which could not be discovered in testing for malfunctions. The other expert, a gunsmith, corroborated this testimony as to the normal operation of the weapon.

From this evidence appellants argue that a directed verdict was demanded as only one interpretation is possible; that appellee must have been negligent because the weapon could not be fired unless the pump mechanism and the bolt were in the forward position, the safety off and the trigger pulled.

Appellants' argument ignores testimony that the pump mechanism would not open when appellee pulled back on it and when he pulled harder the gun slipped off his hip and began to slip from his grasp. That there was a defect which jammed the pump action in the forward position was corroborated by the testimony of weapons

expert Parian who discovered and repaired the defect, and who also admitted that it is possible for guns to malfunction unexpectedly. Thus, the evidence raises the defense of accident.

In personal injury cases, accident is " 'an injury which occurs without being caused by the negligence of either the plaintiff or the defendant. [Cits.]' . . . 'The idea of accident excludes responsibility because of negligence.' " *Bush v. Skelton,* 91 Ga. App. 83, 84 (84 SE2d 835).

So, although the evidence can be construed as appellants do, it can also be construed that when the pump action stuck or jammed because of a defect in the weapon and began to slip from appellee's grasp, the weapon unexpectedly and accidentally was fired without negligence on appellee's part.

Appellants also argue that the normal rule on a motion for directed verdict that the evidence is construed against the mov-ant does not apply because the opposing party's testimony was contradictory, vague, inconclusive or ambiguous and should be construed against him. *Johnson v. Curenton,* 127 Ga. App. 687 (195 SE2d 279). However, our examination of appellee's testimony does not indicate that it should be so characterized. He described and demonstrated his handling of the gun, that the pump action was jammed and the gun slipped from his hip and was slipping from his grasp, and that he did not know what caused it to fire. Appellants say that appellee's testimony that he was "pumping downward" when the gun fired means that the pump action had moved back before it fired which is inconsistent with the undisputed evidence that the weapon would not fire if the action moved back. However, this testimony can also be construed that appellee was pulling back or down on the pump but that it did not actually move the mechanism, due to the jamming defect, causing the weapon to slip from his grasp and to fire without negligence on his part.

Reasonable deductions from this evidence show a conflict therein and do not demand a verdict. Therefore, the trial court did not err in failing to direct the verdict. Code Ann. § 81A-150 (a).

2. Although appellee was 15 years old and the deceased 14 at the time of the incident and both beyond the 13-year-old age of accountability set by Code Ann. § 105-1806 the court charged "that due care in a child of tender years is such care as his capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and the situation under investigation." This language comes from Code Ann. § 105-204.

In *Paulk & Fossil v. Lee,* 31 Ga. App. 629 (2), 631 (121 SE 845) it was held that in the absence of any evidence that an injured 15-year-old boy plaintiff "lacked the capacity of one of his years, it

was error for the court to treat him as a 'child of tender years' and to charge the jury [(in the language of Code Ann. § 105-204)]." See *Allen v. Gornto,* 100 Ga. App. 744, 749 (112 SE2d 368), and *Henry Grady Hotel Corp. v. Watts,* 119 Ga. App. 251 (3) (167 SE2d 205) (overruled on other grounds in *Vinson v. Home Builders Assoc. of Atlanta,* 233 Ga. 948 (213 SE2d 890)), for the proper standard to be applied.

Since this charge was not limited to any party it could be applied to both appellee and the deceased. There was no evidence that either boy lacked the capacity of a person of his age. Thus, as applied to appellee the charge gave him a standard of care which was more favorable than authorized by law, and accordingly prejudicial to appellants. Therefore, the judgment must be reversed.

3. It is alleged that the trial court improperly injected and charged on the issue of avoidable consequences because there was no evidence to support such a charge, the charge given was incomplete, and that comparative negligence should have been charged when the charge on avoidable consequences was given.

"If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although plaintiff may in some way have contributed to the injury sustained." Code Ann. § 105-603.

The evidence is that David knew that appellee was going to unload his weapon and that appellee was facing him with the weapon pointing generally over his head. At that time possible danger existed which David took no action to avoid. David then leaned over apparently reaching for his own gun at the time appellee was having a problem with his gun and the muzzle began to move in David's direction. From this it is also inferable that David could have seen the impending danger to himself and moved to avoid it. Thus we find that the issue of avoidable consequences was raised and a charge thereon necessitated.

"To warrant the court in charging the jury on a given topic . . . it is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim, but is truth nevertheless." *Brown v. Matthews,* 79 Ga. 1 (hn. 2) (4 SE 13). Compare, *South v. South Fulton Hosp.,* 162 Ga. App. 581 (1) (292 SE2d 90).

The charge on avoidable consequences was in accordance with the law and error free. However, since it is inferable that the decedent also may have been negligent, comparative negligence should also have been charged. Compare, *Davis v. Hammock,* 123 Ga. App. 33 (3) (179 SE2d 283).

4. The remaining enumerations are either mooted by the

foregoing findings, are not meritorious or are not likely to recur in the event of another trial.

*Judgment reversed. Shulman, C. J., concurs. Carley, J., concurs in Divisions 1, 2, and 4 and in the judgment.*

DECIDED MARCH 3, 1983.

*M. Francis Stubbs,* for appellants.
*T. Peyton Miles,* for appellee.