41721. DILLASHAW v. COOGLER et al.

ARGUED JANUARY 3, 1966—DECIDED JULY 11, 1966—
REHEARING DENIED JULY 21, 1966.

*Reeves & Collier, Rex T. Reeves, Merrell Collier,* for appellant.
*Marvin G. Russell, Turner Paschall,* for appellees.

PANNELL, Judge. The mother of a 13-year-old boy, 5 feet 8 inches in height and weighing 150 pounds, who drowned in a swimming area in an artificial lake separated from a fishing area by a boardwalk extending from shore to shore, the plaintiff's son being a paying customer at the time, brought suit against the defendants who operated said swimming area to recover damages arising out of the death of her son. The allegations of negligence were as follows:

"(a) In that the defendant invited the deceased son of the plaintiff upon his said premises for a lawful purpose and thereafter the defendant failed to exercise ordinary care in keeping his premises and approaches safe in the particulars set forth herein. . .

"(d) In that there were no signs or warnings of any nature whatsoever indicating the depth of the water at the various places in the swimming pool. . .

"(f) In that the plaintiff's deceased son was not given any warning or notice whatsoever by the defendant, its servants, agents or employees that the area of the water at the place where petitioner's son drowned was at a depth in excess of 6 feet, being over the head of petitioner's deceased son.

"(g) In that there was no attempt on the part of the defendant to have the swimming pool divided into areas reflecting or separating the various depths of the water so that plaintiff's deceased son could have remained in water not over his head.

"(h)   In that the defendant failed to have ropes or any other item across the surface of the swimming pool dividing the shallow water and the deep water so that the plaintiff's minor son could have remained out of the deep water area.

"(i)   In that the defendant at the time of the drowning did not have any ropes or similar items stretched across the swimming pool for plaintiff's deceased son to use for rest and/or safety purposes.

"(j)   In that the defendant failed to have any lifeguard or other employee watching those in the swimming pool so that rescue efforts could have been made immediately upon it being discovered that a person was under the water and missing.

"(k)   In that the defendant failed to require its lifeguard to be in a place and position so as to give immediate emergency rescue efforts to those in peril so that such persons, as in the case of petitioner's son, would not have to wait up to approximately seven minutes before any such procedures were undertaken by defendant or its agents, servants or employees.   .  .

"(m)   In that the defendant failed to have anyone present to recover and find plaintiff's minor son before the passage of approximately 12 minutes even though it was known where he was in the water immediately before his disappearance.

"(n)   In that the defendant did not at any time give any tests to the said lifeguard who was on duty at the time of the drowning of petitioner's son to determine said lifeguard's proficiency in the field of lifeguarding or his ability to save lives of those in peril while swimming, such as petitioner's deceased son.

"(o)   In that the defendant failed to exercise ordinary care in selecting and retaining one as a lifeguard, who was on duty at the time of the drowning of plaintiff's son, who had not developed his swimming ability and diving skill to such a degree as to enable him to remain under water and search for petitioner's minor child who was submerged in the water.   .  .

"(q)   In that the defendant failed to exercise ordinary care in the selection and retention of the lifeguard who was on duty at the time of the drowning of petitioner's son without the benefit of any tests or examination of any sort in respect to his ability, training, and experience as a lifeguard, when he knew or could

have known by exercise of ordinary care, that the said lifeguard had not developed his diving skill and swimming ability as to enable him to remain under water for a sufficient period of time in order to search for a missing person in the water such as in the case of petitioner's minor son.

"(r) In failing to have more than one lifeguard on duty at the time of the drowning of petitioner's son when there were approximately 150 or 200 persons in the swimming pool area and some 75 persons were in the swimming pool.

"(s) In that the defendant had failed to give and enforce rules and regulations requiring its lifeguard to watch carefully the swimming area at all times so as to be on the lookout for any person in the swimming pool who may have been in need of help or who may have gone under the water and did not within a reasonable time come to the surface such as in the case of petitioner's deceased minor son.

"(t) In failing to require its lifeguard on duty to know generally at all times the whereabouts of those in the swimming pool and to start an immediate search for anyone in the pool found to be missing or under water.

"(u) In placing a raft in the swimming pool in such a location that the water was ten feet or more deep between the bank of the pool and said raft without placing any sign indicating the depth of the water between the raft and the bank of the pool or any other sign of any nature whatsoever warning petitioner's minor son of the dangers involved.

"(v) In failing to institute an immediate search for petitioner's minor son upon being notified of his disappearance."

The jury found for the defendants and the case is before this court on appeal by the plaintiff, enumerating as error the usual general grounds of a motion for new trial and various enumerations relating to the charge of the court.

The proof showed without dispute that two lifeguards were on duty and, by expert testimony, that they were properly trained, each of them having a Red Cross life saving certificate. There was uncontradicted testimony that the two lifeguards on duty were skilled swimmers and divers, although the uncle of the deceased child testified that in his opinion one of the lifeguards

while diving at a spot where the child's body was not found but where the child was last seen was, in the witness's opinion, not a good diver (n, o, q, r). The testimony was in sharp conflict as to whether a rope with floats was in place on the occasion in question; however, the uncle of the deceased child testified unequivocally that the lack of the float with ropes had nothing to do with the drowning (h, i). There was testimony from expert witnesses that two guards were sufficient, in their opinion as experts, to handle the number of people at the swimming area and that a lifeguard could not possibly watch each and every person all the time. The evidence disclosed that the lifeguard whose chair was close to the spot where the child was last seen was not in his chair at the time, but it was also disclosed he was performing proper duties elsewhere in looking after small children using a slide where the water was over the heads of some of them (j, k, s, t). The evidence does not disclose that the location of the raft had anything to do with the drowning of the child (u). The only other allegations of negligence related to the failure to have any signs or warnings or markings indicating the depth in various areas. There was a dispute as to the depth of the water where the child was last seen, although no one saw him go under except there was testimony that he was going under and up out of the water and hollering, but the witnesses who saw and heard this occurrence stated that they thought he was playing and did not see him go under and not come up. There was uncontradicted testimony by a medical doctor who performed an autopsy that the deceased had suffered several blows on his head which had caused a concussion sufficient to render the child unconscious. This witness also testified that the injuries to the brain were of such a nature that they disclosed the heart had stopped pumping blood a very short time after the injury, but that the blows themselves did not cause death, that death was caused by drowning. There was no evidence as to how or in what manner these blows were received. Under all these circumstances it does not appear that the depth was the cause of the drowning (a, s, g).

The evidence does not disclose there was any undue delay in making search for the deceased. The evidence does disclose

that a search was made at the place pointed out by the uncle of the deceased child as the place where the child was last seen and that several minutes elapsed with a futile search in this area, the child being found some distance therefrom and was apparently dead when brought to shore (v).

*Judgment affirmed. Felton, C. J., and Frankum, J., concur.*