## 66265. KIRBY et al. v. SPIVEY.

CARLEY, Judge.

Appellants, in their individual capacities "as next of kin and only heirs of Ed Echols, Deceased," instituted the instant wrongful death action against appellee-Dr. Spivey and the nursing home in which Mr. Echols resided until a short time before his death. As against Dr. Spivey, the appellants' complaint alleged that Mr. Echols' death was the proximate result of medical malpractice. The asserted malpractice was Dr. Spivey's failure to diagnose and treat Mr. Echols for renal failure and cancer of the prostate, the conditions alleged to have led ultimately to his death. Dr. Spivey answered and denied the material allegations of appellants' complaint.

After discovery, Dr. Spivey moved for summary judgment and supported the motion with his own affidavit. The relevant averments of Dr. Spivey's affidavit were as follows: He was aware of Mr. Echols' symptoms which were indicative of cancer and had suspected "a malignancy in the uninary tract, most probably in the bladder or prostate." "On more than one occasion," Dr. Spivey voiced his suspicions to Mr. Echols and recommended a referral "to a urologist or other specialist for appropriate tests to determine whether he had cancer." Mr. Echols' reply was "that he did not want to be referred to a specialist and that he did not want to have any diagnostic tests respecting the suspected cancer." "[F]or several reasons," Dr. Spivey deviated from his "customary practice to involve members of a patient's family when the patient indicates that he does not desire treatment for a known condition or declines to have diagnostic tests or be referred to a specialist." The first of those reasons was that "Mr. Echols was lucid and, in [Dr. Spivey's] opinion, entirely capable of making a rational decision to decline treatment. Second, Mr. Echols had no wife or children. His other relatives had never, to [Dr. Spivey's] knowledge, visited him . . ." With specific reference to Mr. Echols' kidney condition, it was Dr. Spivey's medical opinion that "[t]here was nothing which could be done . . . outside of seeing to it that he had an adequate intake of fluids," as Mr. Echols was not "a good candidate for renal dialysis because of his advanced age and because of the other medical problems he had." It was the final conclusion of Dr. Spivey that, in his own medical opinion, "in all the medical services which [he] performed for Mr. Echols, [he] exercised at least as high a degree of care, skill and diligence as would ordinarily be employed by members of the medical profession generally under similar conditions and like circumstances, and that [he] was never negligent in any way or manner in connection with any of the services that [he] rendered to Mr. Echols."

In opposition to Dr. Spivey's motion, appellants submitted, along with other evidence, another physician's affidavit. It was the expert medical opinion of appellants' affiant that Dr. Spivey's failure to conduct a "thorough, urological work-up to permit proper diagnosis and timely treatment" of Mr. Echols or to "refer Mr. Echols to a urologist or other specialist for appropriate tests to determine the nature of his disease" was "negligent and was not an exercise of the proper care, skill and diligence as would ordinarily be employed by members of the medical profession generally under similar circumstances and like conditions." With specific regard to Dr. Spivey's contention that he had recommended, but that Mr. Echols had refused, referral to a specialist for diagnostic testing, appellants' affiant stated: "If this did occur as Dr. Spivey testified in his affidavit it is my opinion that it would be the accepted standard in the medical profession generally to place this conversation and/or the recommendations in the hospital records and/or to discuss Mr. Echols' alleged refusal of this treatment with a responsible member of his family and to note such discussion in the medical record. Dr. Spivey's obvious decision not to do that does not follow in my opinion the degree of care, skill and diligence as would ordinarily be used or employed by members of the medical profession generally under similar conditions and like circumstances. Failure to make a notation of such an important event as refusal of necessary treatment casts doubt upon Dr. Spivey's contention that it did in fact occur."

On this evidence, Dr. Spivey's motion for summary judgment was heard by the trial court. Thereafter an order granting the motion was entered. It is from that order that appellants bring the instant appeal.

1. Dr. Spivey first asserts that his motion for summary judgment was properly granted because appellants, as the "next of kin and only heirs of Ed Echols, Deceased," have no capacity and standing to bring the instant wrongful death action. It appears that this issue was not raised in the trial court. Thus, it "could not properly have been the basis for a grant of summary judgment in this case." *Parker v. Centrum Intl. Film Corp.,* 141 Ga. App. 521, 522 (233 SE2d 877) (1977).

2. Dr. Spivey contends that summary judgment was properly granted when the allegations of his alleged negligence are viewed against the "right of a person 18 years of age or over to refuse to consent to medical and surgical treatment as to his own person." OCGA § 31-9-7 (Code Ann. § 88-2907). "[A] competent adult has the right to refuse necessary lifesaving surgery and medical treatment (i.e., has the right to die) where no state interest other than saving the life of the patient is involved. [Cit.]" *Jefferson v. Griffin Spalding*

*County Hosp. Auth.,* 247 Ga. 86, 89, 90 (274 SE2d 457) (1981) (concurring opinion of Justice Hill). In advancing this argument, Dr. Spivey relies upon that portion of his own affidavit which states that he apprised Mr. Echols of the possible existence of cancer and had recommended diagnosis and treatment therefor but that Mr. Echols had declined.

A lucid adult has the right to withhold his consent to suggested and recommended medical procedures and, absent such consent, a physician owes no further duty to his patient in that regard other than to honor the decision. A patient, "by virtue of his right of privacy, can refuse to allow intrusions on his person, even though calculated to preserve his life." *Zant v. Prevatte,* 248 Ga. 832, 834 (286 SE2d 715) (1982). Accordingly, we reject any contention by appellants that they, as merely the next of kin, had any right or interest whatsoever in being informed by Dr. Spivey of his lucid patient's refusal to seek recommended treatment. The decision was entirely Mr. Echols' and the fact that appellants were not directly so informed by his physician proves nothing to advance their claim or to prevent the grant of summary judgment to Dr. Spivey.

However, the question yet remains whether it has been established as a matter of law that Dr. Spivey did in fact inform *Mr. Echols* of the recommendation that he undergo diagnosis for possible cancer of the prostate and that Mr. Echols refused this recommendation. Appellants' affiant could not, of course, specifically controvert Dr. Spivey's assertions in that regard. Since we have held that, under the circumstances, no one other than Mr. Echols had a right to be informed or consulted with regard to his medical treatment, no one other than Mr. Echols would be in a position to deny specifically that he had been apprised of his need for diagnostic treatment by Dr. Spivey. What appellants' affiant did attempt was to attack the credibility of Dr. Spivey's contention that he had informed Mr. Echols of the suspected cancer. This was done though the affiant's assertion that the lack of corroborative evidence in this regard in Mr. Echols' medical records signifies a breach of professional standards and "casts doubt on Dr. Spivey's contention" that Mr. Echols was informed of his suspected cancer. That the accepted standard medical practice was to include a notation in the records of a patient refusing recommended treatment and that such a notation did not appear in Mr. Echols' records was not controverted by Dr. Spivey. Thus, the question becomes whether, under this state of the record, Dr. Spivey's testimony that he advised Mr. Echols to have diagnostic treatment is unimpeached.

"The interest of a witness in the result of the suit, especially where he is a party, may always be considered in passing on his

credibility; and, although he may not be contradicted by any other witness, but there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him." *McRae v. Wilby,* 59 Ga. App. 401 (1a) (1 SE2d 77) (1939). Dr. Spivey, in his answer, made no specific mention of Mr. Echols' refusal of suggested treatment. Nor did the issue of Mr. Echols' refusal to consent to medical treatment for suspected cancer arise in Dr. Spivey's answers to appellants' interrogatories, although it appears that Mr. Echols' refusal of medical treatment would not have been an inappropriate response to several of them. The first time the issue of Mr. Echols' refusal of medical treatment appears in the case is in Dr. Spivey's own affidavit which was filed in support of his motion for summary judgment. And, as noted above, the testimony of appellants' affiant that it is standard medical practice to make a notation on a patient's medical records of refused treatment and that no such notation appears in Mr. Echols' records is not disputed by Dr. Spivey.

Under these circumstances, we find that a genuine issue of material fact remains in the case as to credibility of Dr. Spivey's testimony regarding Mr. Echols' apprisal and refusal of medical treatment for cancer. " 'Implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto.' [Cit.]" *Chaffin v. Community Loan &c. Co.,* 67 Ga. App. 410 (2) (20 SE2d 435) (1942). Under the record before us, it would appear that Dr. Spivey's consistent silence on the issue during all times preceding the filing of his motion for summary judgment and the lack of corroborative medical records are a legitimate source of inquiry concerning the credibility of Dr. Spivey's subsequent testimony affirming that Mr. Echols refused recommended treatment. See generally *Bridges v. State,* 242 Ga. 251, 254 (10) (248 SE2d 647) (1978); *Head v. State,* 235 Ga. 677, 678 (221 SE2d 435) (1975); *Salisbury v. State,* 222 Ga. 549 (1) (150 SE2d 819) (1966). Appellants were "entitled to show that the testimony given by [Dr. Spivey] might be of recent fabrication, and [they] could use the absence of supportive and corroborative testimony as a matter of impeachment." *Watts v. State,* 141 Ga. App. 127, 131 (232 SE2d 590) (1977). " 'Where a question of credibility arises as to a material issue, summary judgment should not be granted. [Cit.]' [Cits.]" *Ash v. Spear,* 137 Ga. App. 12, 13 (223 SE2d 26) (1975). We view our holding that a genuine issue of material fact remains regarding Dr. Spivey's credibility as "consistent with the policy in this state that a party may show anything which in the slightest degree affects the credit of an opposing witness. [Cits.]" *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.,* 152 Ga. App. 259,

263 (262 SE2d 554) (1979). Accordingly, a genuine issue of material fact remained regarding Dr. Spivey's negligence in failing to diagnose and treat Mr. Echols' prostate cancer and the grant of summary judgment would have been erroneous unless, on the evidence of record, no *other* essential element of appellants' cause of action has been pierced.

3. Dr. Spivey asserts, however, that even if genuine issues of material fact remain regarding his alleged negligent failure to diagnose and treat Mr. Echols for prostate cancer, summary judgment was nevertheless properly granted. He asserts that the question of whether his negligence in this regard was the proximate cause of Mr. Echols' death has been eliminated from the case and that summary judgment was thus properly granted on that basis.

We note at the outset that no genuine issue of material fact remains in the case regarding Dr. Spivey's alleged negligent treatment of Mr. Echols' kidney condition. As noted above, Dr. Spivey's affidavit stated that he was doing everything that could be done with reference to that condition and that it was his medical opinion that he was not negligent in connection with his treatment of Mr. Echols. Appellants offered nothing to controvert this evidence, the affidavit of their expert relating solely to the issue of Dr. Spivey's failure to diagnose and treat Mr. Echols for prostate cancer. Accordingly, the sole issue remaining for resolution in the case is whether Dr. Spivey's alleged negligent treatment of Mr. Echols for prostate cancer has been eliminated as a proximate cause of Mr. Echols' death.

In this regard, Dr. Spivey relies upon the deposition testimony of another doctor who subsequently did diagnose and treat Mr. Echols for prostate cancer and who was Mr. Echols' attending physician at the time of his death. It was the medical opinion of this physician that Mr. Echols died from his kidney condition. However, Dr. Spivey's purported negligent treatment of Mr. Echols' prostate cancer is not necessarily eliminated as a proximate cause of his death from his kidney condition in the absence of evidence which would establish as a matter of law that Dr. Spivey's asserted negligent failure to diagnose and treat Mr. Echols for cancer did not aggravate his kidney condition. See generally *Nat. Dairy Products Corp. v. Durham,* 115 Ga. App. 420 (154 SE2d 752) (1967); *Saul Klenberg Co. v. Mrozinski,* 78 Ga. App. 59 (1) (50 SE2d 247) (1948).

We find that such uncontroverted evidence eliminating Dr. Spivey's asserted negligence with regard to Mr. Echols' cancer treatment as a proximate cause of death from kidney failure exists in the instant case. The medical opinion of Mr. Echols' final attending physician was as follows: "I don't think anybody could [have]

changed [Mr. Echols'] course by treating his cancer of the prostate, [be]cause it wasn't that bad, in terms of the tests that we get and clinical manifestations." The deponent also testified that he "wouldn't think that [Mr. Echols' prostate cancer] shortened" his life but that in fact the *treatment* of that condition might have "added to his morbidity . . ." The entirety of the deponent's expert medical testimony demonstrates that the absence of previous diagnosis and treatment for prostate cancer played no part in Mr. Echols' death.

No evidence for appellants controverts the expert medical testimony that the physical condition that Dr. Spivey allegedly negligently failed to diagnose and treat, prostate cancer, was not in fact a contributing causal factor in the death upon which appellants' claim is premised. Appellants' affiant only offered his expert opinion that Dr. Spivey was negligent in failing to diagnose and treat Mr. Echols for prostate cancer. There was no opinion offered that Dr. Spivey's alleged negligence in this regard was a proximate cause in Mr. Echols' death. Thus, although there remained a genuine issue of material fact regarding Dr. Spivey's alleged negligence in failing to diagnose and treat Mr. Echols for prostate cancer as discussed in Division 2, it is clear that Dr. Spivey's evidence pierced the pleadings as to proximate cause which was another essential element of appellants' cause of action. "No matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable." *McKinney v. Burke,* 108 Ga. App. 501 (2) (133 SE2d 383) (1963). " 'In order for negligence to create or impose liability, insofar as the defendants are concerned, the plaintiff must have been injured as a result of the negligence of the defendants in one or more of the particulars set forth in the plaintiff's petition as amended as the proximate cause of the alleged injury or injuries sustained . . .' " *Patillo v. Thompson,* 106 Ga. App. 808, 812 (128 SE2d 656) (1962). The trial court did not err in granting summary judgment to Dr. Spivey.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

Decided September 7, 1983.

*Wade C. Hoyt III,* for appellants.
*C. Wade Monk II, J. Clinton Sumner, Jr.,* for appellee.