A91A0272. WALKER et al. v. DANIELS et al.
(407 SE2d 70)

BEASLEY, Judge.

Plaintiff-appellees, the surviving parents of Felder Gene Daniels, Jr., instituted this wrongful death action against the Board of Regents of the University System of Georgia and various of its agents and employees. The decedent, a student at Fort Valley State College,

drowned while participating in a recreational swimming event at the college. Plaintiffs allege that the combined and individual negligent acts of defendants were the proximate cause of death. The jury returned a verdict for appellees in the amount of $1,500,000.

We start with the following principles. The inquiry on appeal after the denial of a motion for directed verdict or judgment n.o.v. is whether there is any evidence to support the verdict. *Stone v. Cook*, 190 Ga. App. 11, 12 (1) (378 SE2d 142) (1989). "Whenever a consideration of evidence is involved in a determination of whether there is error as alleged it must be remembered that '(a)fter the verdict, the testimony is construed in its most favorable light to the prevailing party . . . for every presumption and inference is in favor of the verdict.' [Cits.]" *Young Men's Christian Assn. v. Bailey*, 112 Ga. App. 684, 690-691 (1) (146 SE2d 324) (1965) (*Bailey II*).

The decedent drowned in the school's indoor swimming pool, "the natatorium," on Monday, October 6, 1986, at the beginning of fall quarter. Recreational swimming, when held as an extracurricular activity for students, was held on Monday and Wednesday evenings.

Gerald Walker, Assistant Professor of Health & Physical Education, was the school's Water Safety Instructor. He was responsible for conducting swimming classes for students and for training and certifying lifeguards, two of whom were required to be present during extracurricular swimming events. On an annual basis, Dr. Thomas Palmer, the Vice President of Student Affairs, would contact Walker in order to confirm that there was adequate funding for recreational and instructional swimming activities. They would then enter into a written contract concerning such things as the scheduling of swimming events and the remuneration of student lifeguards. Under official school policy, Walker or his supervisor, Dr. Curtis Martin, Chairman of the Department of Health & Physical Education, was then required to fill out a written form authorizing the use of the school building, in this case the natatorium, at the specified date and time.

Walker had been absent from school during the summer quarter. When he returned to school during fall quarter, he had become interim football coach and his time was consumed by his coaching duties. As of October 6, Walker and Palmer had not entered into a contract for extracurricular swimming events. Nonetheless, notices of a recreational swimming event for students on the evening of October 6 were posted all over campus. Martin and Palmer agreed that since contract arrangements for such events had not been made for that school year, the swimming event should not be held.

However, as testified to by Oris Bryant, Jr., the Director of Campus Safety, there was a divergence between official policy and practice. The Department of Campus Safety would unlock a campus building at the request of individual students representing student or-

ganizations which had been authorized to use such building in the past. After the death, this practice was discontinued.

On the evening of October 6, a student lifeguard telephoned the campus police dispatcher requesting that the natatorium be opened. The dispatcher directed a campus police officer (Frank Jones) to open the pool. Calvin McDonald and Kim Holley, certified lifeguards who had supervised swimming activities at the campus pool in the past, provided lifeguarding services at the swimming event that night. Estimates of the number of students at the pool range from 15 to 19 at the beginning of the evening and 50 to 60 by the end.

Coach Walker had been involved all that day in coaching activities. He returned to the gymnasium/natatorium complex at approximately 8:00 or 8:30 p.m. He heard the clattering of the pool diving board and was alarmed, since he was unaware that a recreational swimming event was taking place. He went to investigate and was met by a student who engaged him in conversation for approximately two minutes. During their conversation, Coach Walker remained in an alcove from which he could see people diving and swimming in the area surrounding the diving board, but he could not see the remainder of the pool. After talking with the student, Coach Walker left the pool area to telephone either campus security or Dr. Martin to find out what was going on. As he was walking away from the pool, a student yelled to him and said there was a swimmer in distress in the pool. Approximately three minutes elapsed between Coach Walker's entry into the natatorium and his summons for a swimmer in distress.

During the recreational swim, lifeguard McDonald was posted in a stationary position on an elevated chair. His area of responsibility was the deep end of the pool. Holley was posted at the shallow end of the pool but also should have been roving. However, Holley was inattentive; he was grabbing and touching female swimmers and generally engaging in horseplay. McDonald left his position and walked to the shallow end of the pool to ask Holley to change places with him because he was not fulfilling his responsibilities where he was. He then walked back to his chair but on the way received word that a body had been discovered at the bottom of the pool.

An off-duty lifeguard standing on the high diving board observed what he initially thought to be a chair at the bottom of the deep end of the pool. He swam down to investigate and found the decedent, who was unconscious. Attempts at cardiopulmonary resuscitation by the lifeguards and then by emergency medical technicians were unsuccessful.

The autopsy report stated that the decedent's lungs were heavy with fluid and identified the cause of death as "Drowning secondary to blunt force trauma to neck." The death certificate identified the cause of death as "Accidental Drowning from Trauma to Neck,"

which was severe enough to cause hemorrhaging. A water safety expert witness for plaintiffs testified that the decedent had been under water for at least four to six minutes and that a drowning victim under water for that period of time generally can be resuscitated, because the heart continues to beat for several minutes after respiration stops. An underwater loss of consciousness could explain the absence of distress signals or surface struggle. Another hypothesis he gave is that a misstep at the edge of the pool caused the decedent to fall, hit his neck, and enter the water in an unconscious state.

McDonald testified that he did not observe the decedent enter the water from the deep end of the pool The incline of the slope of the pool was sufficient to cause a helpless swimmer who had become submerged at the rope divider to roll down to the bottom of the slope into deeper water. The deep end of the pool extended 20 feet from the rope dividing the shallow and deep ends. The deepest portion is 12 feet, and this is where the decedent was found.

The Board of Regents of the University System of Georgia, Gerald Walker, Curtis Martin, Thomas Palmer, Oris Bryant, Jr., Frank Jones, Kim Holley, and Calvin McDonald were named as defendants.

Service of process on McDonald was never perfected. Martin's, Palmer's, and Jones' motions for summary judgment were granted. Walker's, Bryant's, and Holley's motions for summary judgment were denied, as was the Board's motion for contingent dismissal. The jury verdict was returned against Walker, Bryant, Holley, and the Board, and judgment was entered accordingly. Their motions for directed verdict, judgment notwithstanding the verdict, and new trial were denied. They all appeal.

Health and Physical Education Professor Walker and Director of Campus Safety Bryant contend that they owed no affirmative duty of care toward the swimmers in the pool; that even if they did owe the swimmers a duty, their actions were not negligent; and that even if they were negligent, their actions could not have been the proximate cause of the decedent's death. (Enumerations of error 1 and 2.)[1] Lifeguard Holley contends that any inattentiveness on his part could not have been the proximate cause of the victim's death. (Enumeration of error 3.) The Board acknowledges that it would be vicariously liable if any of the individual defendants is adjudged liable, but that all were entitled to j.n.o.v. so that it has no contingent liability. (Enumeration of error 5.)

1. "To state a cause of action for negligence in Georgia, the fol-

---

[1] Appellant Bryant gives as additional reasons that he had no authority to promulgate policy regarding locking or unlocking the pool facility, and that even if he did, negligent policy by a public administrator does not give rise to a cause of action. These reasons are not reached.

lowing elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of duty.' *Lee Street Auto Sales v. Warren*, 102 Ga. App. 345 (1) (116 SE2d 243) (1960)." *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982); OCGA §§ 51-1-1; 51-1-8.

Appellants Walker and Bryant argue that they owed no duty of care toward the decedent, since he was a capable adult swimmer voluntarily attending a recreational swim, albeit on-campus.

" 'The elements of legal liability of the owner or proprietor of premises for injuries occasioned to persons thereon, vary according to whether the person injured was, at the time of the injury, a trespasser, a licensee, a visitor under invitation, express or implied, or a person standing in some special relation recognized by law.' *Mandeville Mills v. Dale*, 2 Ga. App. 607 (1) (58 SE 1060) (1907). The owner or proprietor of premises is liable to a licensee only for wilful or wanton injury. [OCGA § 51-3-2.] As to an invitee, the owner or proprietor owes the duty to exercise ordinary care. [OCGA § 51-3-1.]

" '(W)hether a person is an invitee or a licensee depends upon the nature of his relation or contact with the owner . . . of the premises.' *Chatham v. Larkins*, 134 Ga. App. 856, 857 (216 SE2d 677) (1975). If the relationship solely benefits the injured person, he is at most a licensee. [Cits.] If the relationship is one of mutual interest to the parties, the injured party is an invitee of the owner. [Cits.] '(T)he enterprise must be mutual to the extent that each party is lawfully interested therein; or that there is common interest or mutual advantage involved.' [Cit.] Monetary consideration is not essential. [Cits.]" *Frankel v. Antman*, 157 Ga. App. 26, 27 (276 SE2d 87) (1981).

For these reasons, it has been held that the residential owner of a pool or pond owes no duty to children who venture into the water after coming onto the property without either an express or implied invitation, a pool or pond not constituting an "attractive nuisance." *Adams v. Atlanta Faith Memorial Church*, 191 Ga. App. 215 (381 SE2d 397) (1989). A homeowner who owns a residential pool owes social guests as licensees a duty to not wilfully or wantonly injure them. *Sims v. Willoughby*, 179 Ga. App. 2 (345 SE2d 626) (1986). Under the state recreational use statute, an owner of land who makes land and water areas available to the public for recreational purposes is only liable for wilful and malicious conduct. See also *Bourn v. Herring*, 225 Ga. 67 (1) (166 SE2d 89) (1969).

The relationship between a college or university and one of its students is one of common interest and mutual advantage. It follows

that a student is an invitee and not a mere licensee or social guest. See *Rawlings v. Angelo State Univ.*, 648 SW2d 430, 432 (Tex. App. 1983). Unless the college or university is immune from tort liability, see *Holzer v. Oakland Univ. &c.*, 313 NW2d 124 (Mich. App. 1981); *University of Texas v. Akers*, 607 SW2d 283 (Tex. App. 1980), and no such contention has been made here, case law thus recognizes a duty on the part of the college or university to exercise ordinary and reasonable care for a student's safety. See *Peterson v. San Francisco Community College Dist.*, 685 P2d 1193 (Cal. 1984); *Hall v. Bd. of Supervisors Southern Univ.*, 405 S2d 1125 (La. App. 1981); *Freed v. State Univ. of N. Y.*, 417 NYS2d 530 (App. Div. 1979); see generally 15A AmJur2d, Colleges & Universities, § 39. Cf. *Bradshaw v. Rawlings*, 612 F2d 135, 138 (3rd Cir. 1979), holding that college administrators do not stand in loco parentis to adult college students.

This accords with the general rule, applicable in premises liability actions, that owners or operators of nonresidential swimming facilities owe an affirmative duty to exercise ordinary and reasonable care for the safety and protection of invitees swimming in the pool. See *Dillashaw v. Coogler*, 114 Ga. App. 139 (150 SE2d 161) (1966); *Bailey II*, supra; *Young Men's Christian Assn. v. Bailey*, 107 Ga. App. 417 (130 SE2d 242) (1963) (*Bailey I*); *Morehouse College v. Russell*, 109 Ga. App. 301 (136 SE2d 179) (1964). See also *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297, 301 (2) (208 SE2d 258) (1974), holding that violation of a county ordinance regulating the usage of semi-public pools is negligence per se. See generally 57 AmJur2d, Municipal, County, School, & State Tort Liability, § 320; 87 ALR3d 1032, Annotation: Liability of Operator of Nonresidential Swimming Facility for Injury or Death Allegedly Resulting from Failure to Provide or Exercise Proper Supervision.

The evidence shows that it was official university policy to have two certified lifeguards on duty during recreational swimming events, and two lifeguards were on duty at the time the decedent drowned. Although plaintiffs' expert witness testified that three lifeguards should have been present during the recreational swim so that one could check student identification while the other two supervised the swimming activities, neither of the two lifeguards on duty was checking student identification at the time of decedent's death. Therefore, it must be concluded that neither Walker nor Bryant breached any duty of care toward the decedent that could be found to be the proximate cause of his death, so that enumerations of error 1 and 2 are resolved in their favor.

2. The remaining question is whether the jury was authorized to find that Holley was negligent and, if so, that such negligence was the proximate cause of the death. "The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of

the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. *Powell v. Berry*, 145 Ga. 696, 701 (89 SE 753) (1916). 'Even where there is no dispute as to the facts, it is however, usually for the jury to say whether the conduct in question met the standard of the reasonable man.' [Cits.]" *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (227 SE2d 336) (1976).

McDonald's testimony, and that of an individual who was swimming in the pool when the decedent drowned, clearly authorized the jury to find that Holley was an inattentive and negligent lifeguard.

This case differs from *Dillashaw v. Coogler*, supra, and *Lyman v. Hall*, 219 NW 902 (Neb. 1928) (cited in *Y.M.C.A. v. Bailey II*, supra), wherein swimmers inexplicably disappeared underneath the water and drowned, but there was no evidence of negligence or inattentiveness on the part of a lifeguard.

" 'The determination of the proximate cause of an injury is for the jury, except in clear and unmistakable cases, and not a matter of law for the court. Where the cause of an injury depends upon a state of facts from which different minds might reasonably draw different inferences, it is for a jury to determine the proximate cause of the injury.' *Queen v. Patent Scaffolding Co.*, 46 Ga. App. 364 (3) (167 SE 789)." *Saul Klenberg Co. v. Mrozinski*, 78 Ga. App. 59 (2) (50 SE2d 247) (1948).

As was stated in *Bailey I*, supra at 419 (1): "While it is true as contended by the defendant, that the plaintiff in this case was unable to show the exact manner in which the deceased drowned, and while there was no evidence of any struggle or outcry by him, the evidence disclosed that his submerged body was clearly visible in the water, and it cannot be said as a matter of law that a successful rescue of the decedent could not have been effected if due diligence had been exerted by the defendant in this case." Although there is no evidence that the decedent's submerged body was "clearly visible in the water," the extent of its visibility, and whether a successful rescue could have been effected if due diligence had been exerted, were jury questions.

In this case, as in *Bailey I*, supra, *Bailey II*, supra, and *Morehouse College v. Russell*, supra, whether or not the negligence of the lifeguard was the proximate cause of the death was for the jury. Compare *Murphy v. D'Youville Condominium Assn.*, 175 Ga. App. 156 (333 SE2d 1) (1985), holding that the plaintiff's failure to exercise ordinary care for his own safety by diving into the shallow end of a pool was the sole proximate cause of his injuries.

The evidence does not establish as a matter of law that Holley's defendant's action "stands in no causal relation to the injury," *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 512 (317 SE2d 853) (1984), or that such negligence was not, as a matter of law, a "contrib-

uting causal factor" in the plaintiff's injury. *Kirby v. Spivey*, 167 Ga. App. 751, 756 (3) (307 SE2d 538) (1983).

Here, as in *Bailey II*, supra at 706 (14), "there was direct proof that plaintiff's son was found at the bottom of defendant's pool and when rescued therefrom was dead, but there was, of necessity, reliance upon circumstantial proof . . . that his death resulted from some act of negligence on the part of the defendant."

" 'Where a plaintiff in a civil case supports his case solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied on. . . . It is for the court to say whether the circumstances reasonably establish the hypothesis relied on by the plaintiff. If the evidence meets this test, it is then for the jury to say, either that the plaintiff has not carried his burden of proof because the evidence equally supports his hypothesis and some other reasonable hypothesis, or that the plaintiff has carried his burden of proof in that the evidence preponderates to his hypothesis as against all other reasonable but less probable hypotheses.' " *Henry Grady Hotel Corp. v. Watts*, 119 Ga. App. 251, 253 (1) (167 SE2d 205) (1969).

Again, as in *Bailey II*, supra at 706 (14), "Whether the plaintiff's case here was dependent for its resolution upon guess or speculation was a matter, under the evidence, addressing itself to the jury. . . ."

3. Appellants' enumeration of error 4 is the jury instructions concerning pain and suffering. The trial court charged that pain and suffering is a legal item of damages; that the questions of whether, how much, and how long the plaintiff suffered are for the jury to decide; and that the measure of damages is the enlightened consciences of fair and impartial jurors.

Appellants argue that there is no evidence that the decedent was conscious at any point between the blunt trauma injury which caused him to drown and his death. Appellees' expert witness testified that a wet drowning, i.e., water in the lungs, indicates that the person was conscious as he or she was inhaling water into the lungs, although on cross-examination the witness did state that it is possible that an unconscious person could continue to breathe underwater.

Under this evidence, questions concerning the decedent's pain and suffering were for the jury to decide. The charge was not given in error. See *Ga. Power Co. v. Bishop*, 162 Ga. App. 122, 124 (6) (290 SE2d 328) (1982). The judgment is affirmed as to Holley and the Board and reversed as to Walker and Bryant.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Carley, J., concur.*

DECIDED MAY 31, 1991 —
REHEARING DENIED JUNE 25, 1991.

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Michael E. Hobbs, Alfred L. Evans, Jr., Senior Assistant Attorneys General,* for appellants.
*William J. Murray, D. Joy Handelman,* for appellees.